UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

M. LADY, LLC,                        :

                    Plaintiff,       :    06 Civ. 0194 (HBP)

          -against-                  :    OPINION
                                          AND ORDER
AJI, INC. and ANTHONY J. IATI,       :

                    Defendants.      :

----------------------------------X

          PITMAN, United States Magistrate Judge:


I.   Introduction


          Plaintiff, M. Lady, LLC ("Lady"), brings this action

against AJI, Inc. ("AJI") and Anthony J. Iati (collectively,

"defendants") alleging copyright infringement.  On September 19,

2007, I granted plaintiff's motion for summary judgment on its

copyright infringement and vicarious infringement claims (Docket

Item 33).  Plaintiff now moves for an award of $60,000 in statu-

tory damages and $14,846.65 in attorneys' fees and costs.

          The parties consented to my exercising plenary juris-

diction in this matter pursuant to 28 U.S.C. § 636(c).  For the

reasons set forth below, plaintiff's motion is granted in part.


II.  Procedural History


          Plaintiff commenced this action against Dillard's Inc.

("Dillard's") on January 11, 2006.  Dillard's answered the

complaint on February 28, 2006 and promptly withdrew the accused
merchandise from sale (Dillard's Answer to Plaintiff's Amended
Complaint, dated May 1, 2006, ("Dillard's Ans.") at ¶ 48; Docket
Item 13).  Plaintiff subsequently filed an amended complaint
adding AJI and Iati as defendants.  Dillard's answered the
Amended Complaint by denying many of the allegations and assert-
ing cross-claims against AJI, its supplier, alleging breach of
warranty of non-infringement (Dillard's Ans. at ¶ 47).  On
September 6, 2006, defendant Dillard's was dismissed from this
action with prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(ii).  In
2007, I granted plaintiff's motion for summary judgment on both
its copyright infringement and vicarious infringement claims
(Docket Item 33).  Defendants did not answer either of the
complaints in this action nor did they file any papers in opposi-
tion to plaintiff's motion for summary judgement.  Defendants
did, however, respond to plaintiff's interrogatories.

        After a conference held on October 30, 2007, attended
by plaintiff but not defendants, I issued a Scheduling Order
directing plaintiff to serve and file proposed findings of fact
and conclusions of law with respect to the amount of damages to
be awarded no later than November 13, 2007 and directing defen-
dants to submit responsive materials by November 27, 2007 (Docket

Item 34).  My Scheduling Order further provided that if defen-

dants:

> (1) FAIL TO RESPOND TO PLAINTIFF'S SUBMISSIONS, OR (2)
> FAIL TO CONTACT MY CHAMBERS BY NOVEMBER 27, 2007 AND
> REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO
> ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON
> THE BASIS OF PLAINTIFF'S WRITTEN SUBMISSIONS ALONE
> WITHOUT AN IN-COURT HEARING.  See Transatlantic Marine
> Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d
> 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity
> Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t
> [is] not necessary for the District Court to hold a
> hearing, as long as it ensured that there was a basis
> for the damages specified in a default judgment.")

(Emphasis in original).

A copy of my November 1, 2007 Scheduling Order was sent

to defendants at the addresses at which they were served.

Plaintiff timely submitted proposed findings of fact

and conclusions of law in response to my November 1, 2007 Sched-

uling Order.  Defendants has not made any submission to me, nor

have they contacted my chambers in any way.  Accordingly, on the

basis of plaintiff's written submissions alone, I make the

following findings of fact and conclusions of law.

III.  Findings of Fact

    A.  The Parties

    1.  Plaintiff Lady is a designer and vendor of handmade

jewelry to high-end department stores and specialty stores. (see

Plaintiff's Memorandum of Law in Support of Plaintiff's Request

for Statutory Damages and Attorney's Fees, dated November 5, 2007, ("Plf. Mem.") at 2).

2.  Defendant AJI is a New York corporation that imports and sells jewelry and other products to retail stores (Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, Submitted Pursuant to Rule 56.1 ("Pltf. 56.1") at ¶ 2).  AJI has its principle office at 718 Fulton Street, Mount Vernon, New York (Amended Complaint, dated March 27, 2006, at ¶ 6; Docket Item 12).

3.  Anthony J. Lati is the President, Chief Executive Officer, and Chairman of AJI (see Pltf. 56.1 at ¶ 3; Copy of Entity Information for AJI from New York State, Department of State, Division of Corporations Website ("Entity Information"), attached as Exhibit 6 to the Declaration of Richard S. Schurin, Esq. in Support of Plaintiff's Motion for Summary Judgment, dated Jan. 16, 2007 ("Schurin Sum. Judg. Decl.")).

B.  Plaintiff's Business and
    Defendants' Infringement

4.  Plaintiff is the exclusive owner of copyrights in two jewelry designs created by Mindi Lam (Pltf. 56.1 at ¶ 6). The first is titled "Lady Brooch MBM" and is the subject of U.S. Copyright Registration No. VA 1-252-810 (see Plf. Mem. at 2; Copy of U.S. Copyright Registration No. VA 1-252-810, attached as Exhibit 2 to Schurin Sum. Judg. Decl.).  Lady Brooch MBM, which

4

is composed of colored beads and wire, is designed in the shape
of a flower with fourteen petals, two leaves, and a stem (see
Pltf. 56.1 at ¶ 7; Samples of Plaintiff's Jewelry, attached as
Exhibit 1 to Schurin Sum. Judg. Decl.).  The second jewelry
design is titled "SBM-2" and is the subject of U.S. Copyright
Registration No. VA 1-296-962 (see Pltf. 56.1 at ¶ 11; Copy of
U.S. Copyright Registration No. VA 1-296-962, attached as Exhibit
2 to Schurin Sum. Judg. Decl.).  SBM-2, which is also made of
colored beads and wire, is designed in the shape of a flower,
with eight petals, two leaves, and a stem (see Pltf. 56.1 at ¶ 7;
Samples of Plaintiff's Jewelry, annexed as Exhibit 1 to Schurin
Sum. Judg. Decl.).

        5.   The Lady Brooch MBM sells at retail for approxi-
mately $250 and the SBM-2 sells for approximately $150 (Declara-
tion of Mindi Lam, dated November 9, 2007, ("Lam Decl.") at ¶
10).

        6.   The Lady Brooch and the SBM-2 have been commer-
cially successful and have been featured in magazine articles and
featured on the television program entitled The View (Lam Decl.
¶¶ 6, 10).  Women's Wear Daily has described the Lady Brooch as
"the talk of Fifth Avenue" ("Coming Up Roses", Women's Wear
Daily, May 2003, attached as Ex. B to the Plf. Mem.).

        7.   Sometime prior to December 2005, an unidentified
"jewelry buyer" at Dillard's requested that defendants manufac-

ture and supply a particular piece of jewelry (Lam Decl. ¶¶ 15-19; Defendant AJI's Answer to Plaintiff's Interrogatories, dated Oct. 17, 2006 ("Def. Answers"), Nos. 14, 16, attached as Ex. G to Plf. Mem.). Dillard's provided defendants with the design and a photograph of the requested piece of jewelry (Def. Answers Nos. 14, 15).

       8. Defendants sold Dillard's approximately 286 pieces of jewelry that are virtually identical to plaintiff's copyrighted Lady Brooch MBM and SBM-2 designs for a total of $3,260.00, generating a profit for defendants of $1,455.74 (Def. Answers Nos. 1, 4, 5; Docket Item 33 at 12-13).

       9. Dillard's sold the infringing Lady MBM Brooches for approximately $78.00 and the infringing SBM-2s for approximately $19.00 (Lam Decl. ¶¶ 16, 18; Sales Receipt attached as Ex. D to Plf. Mem.).

IV. <u>Conclusions of Law</u>

   A. <u>Jurisdiction and Venue</u>

      10. This action arises under the Copyright Laws of the United States. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338.

      11. The court has personal jurisdiction over defendants because AJI is a New York Corporation that transacts

business in New York and Iati transacts business in New York.
N.Y. C.P.L.R. § 302.

12.  Venue is proper in this District because the
defendants are subject to jurisdiction in this District.  28
U.S.C. § 1391(b)-(c).

B.  <u>Damages for Copyright Infringement</u>

13.  As the owner of the copyrights identified in
paragraph 3, plaintiff holds the exclusive right to duplicate
those works.  17 U.S.C. § 106(1).

14.  Defendants' unauthorized duplication of the works
identified in paragraph 3 infringed plaintiff's exclusive rights
and renders defendants liable for either plaintiff's damages,
defendants' profits or statutory damages.  17 U.S.C. §§ 501,
504(a).  Plaintiff has elected to seek statutory damages (Plf.
Mem. at 4).

15.  Title 17, United States Code, Section 504 pro-
vides, in pertinent part:

(c) Statutory Damages.--

(1) Except as provided by clause (2) of this subsec-
tion, the copyright owner may elect, at any time before
judgment is rendered, to recover, instead of actual
damages and profits, and award of statutory damages for
all infringements involved in the action, with respect
to any one work, for which any one infringer is liable
individually, or for which any two or more infringers
are liable jointly and severally, in a sum of not less
than $750 or more than $30,000 as the court considers
just.  For the purposes of this subsection, all the

parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.  In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduced the award of statutory damages to a sum of not less than $200 . . . .

16.   The Court has broad discretion, within the statutory limits, in awarding statutory damages.  Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986); NFL v. PrimeTime 24 Joint Venture, 131 F. Supp.2d 458, 472 (S.D.N.Y. 2001).

17.   In awarding statutory damages, the Court is required to consider various factors, including the expenses saved and profits reaped by the defendants, the revenues lost by the plaintiff, the value of the copyright, the deterrent effect of the award on other potential infringers, and factors relating to individual culpability.  Fitzgerald Publ'g Co. v. Baylor Publ'g Co., supra, 807 F.2d at 1117; Getaped.com, Inc. v. Cangemi, 188 F. Supp.2d 398, 403 (S.D.N.Y. 2002); Guess?, Inc. v. Gold Center Jewelry, 997 F. Supp. 409, 411 (S.D.N.Y. 1998); Schwartz-Liebman Textiles v. Last Exit Corp., 815 F. Supp. 106, 108 (S.D.N.Y. 1992).

18.   The only evidence concerning damages produced in
this case is defendants' statement that their gross sales of
infringing items totaled $3,260.40 and their profit from those
sales totaled $1,455.74 (Def. Answers Nos. 1, 4).

19.   Plaintiff seeks an award of $60,000 in statutory
damages and argues that while there has been no finding of
willfulness here, the maximum statutory award for non-wilful
infringement is warranted because "there is little doubt that
defendants willfully infringed plaintiff's copyrights" (Plf. Mem.
at 4).   "To prove 'willfulness' under the Copyright Act, the
plaintiff must show (1) that the defendant was actually aware of
the infringing activity, or (2) that the defendant's actions were
the result of 'reckless disregard' for, or 'willful blindness'
to, the copyright holder's rights."   Island Software & Computer
Service, Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir.
2005); Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d
Cir. 2001) ("Willfulness in this context means that the defendant
recklessly disregarded the possibility that its conduct repre-
sented infringement."); Nike, Inc. v. Top Brand Co., 00 Civ. 8179
(KMW), 2005 WL 1654859 at *10 (S.D.N.Y. July 13, 2005).

20.   The fact that the jewelry produced by defendants
is virtually identical to plaintiff's copyrighted design, is
strong evidence that defendants copied plaintiff's designs and
that defendants' infringement was intentional.   Indeed, I can

9

infer that the defendants acted willfully by virtue of their default in this action.  See Malletier v. Whenu.Com, Inc., 05 Civ. 1325 (LAK), 2007 WL 257717 at *4 (S.D.N.Y. Jan. 26, 2007); Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., 03 Civ. 2132 (GBD)(KNF), 2006 WL 728407 at *6 (S.D.N.Y. Mar. 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, 03 Civ. 0996 (KMW)(DF), 2004 WL 1542253 at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) v. Luban, 282 F. Supp.2d 123, 124 (S.D.N.Y. 2003); Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983). In addition, the fact that defendants admit to receiving a photograph of plaintiff's design and then manufacturing copies of that design supports a finding of willfulness (Plf. Mem. at 5; Def. Answers No. 14).

21.  I have concluded that plaintiff is entitled to an award of statutory damages of $25,000 for each infringed work for a total damages award of $50,000.  Defendants appear to have acted wilfully here which indicates that an award on the higher end of the range of permitted damages is appropriate.  On the other hand, while I believe that the estimate of $1,455.74 likely understates defendants' illegal profits, it appears as if defendants' operation was relatively small in scale.  The defendants manufactured a limited number of these products in response to an order from Dillard's and there is no evidence that defendants were offering to sell them to the public at large.

22.   Accordingly, I conclude that $50,000 ($25,000 per copyright), more than fifteen times the gross sales indicated in defendants' interrogatory response, is more than sufficient to compensate plaintiff for any damage it suffered and to deter similar infringements in the future.

C.   Attorney's Fees

23.   Plaintiff also seeks a total of $14,846.65 in attorney's fees and costs incurred in bringing this action (Declaration of Richard S. Schurin, Esq., dated November 5, 2007 ("Schurin Decl.") at ¶ 4).   Section 505 of the Copyright Act allows the prevailing party to recover full costs and grants the Court discretion to award reasonable attorney's fees.   17 U.S.C. § 505; see Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994) (identifying several non-exclusive factors relevant to an award of attorney's fees including "frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence"); Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999) (the award of attorney's fees "is also justified based on the court's finding of willfulness"); Twin Peaks Productions, Inc. v. Publications Intern., Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993) ("the prevailing party in a copyright action is ordinarily entitled to fees at the trial level").

24.   "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This figure was previously referred to as the "lodestar," but in Arbor Hill the Second Circuit abandoned the use of this metaphor as unhelpful.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 190; see also Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004) (per curiam) ("'[T]he starting point for the determination of a reasonable fee is the calculation of the lodestar amount.'"), quoting Hensley v. Eckerhart, supra, 461 U.S. at 433; Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7, 2008).

25.   Plaintiff's application does not explain how the $14,551.48 fee is derived.  After reviewing plaintiff's submission, however, I have deduced that plaintiff arrived at its calculation of the total attorney's fees attributable to AJI and Iati as follows:  plaintiff takes the total fees expended ($26,228) and deducts (1) $4,607.50 in fees, noted on Invoice No. 135872, incurred before defendants AJI and Iati were added to

this action; (2) an additional $4,900[1] in fees noted on Invoice
No. 136115 that were solely related to Dilbert's; (3) one third
of the expenses, not solely related to Dilbert's, incurred
between March 15, 2006 when AJI and Iati were added as defendants
and August 17, 2006 when the claim against Dilbert's was discon-
tinued (see Schurin Decl. at ¶¶ 4-8; Invoice Nos. 135872, 136115,
attached as Ex. I to Plf. Mem.; Invoice No. 136116, attached as
Ex. K to Plf. Mem.).  Plaintiff's final figure for attorney's
fees of $14,551.48 consists of 39.7 hours billed by Schurin at a
rate of between $350 and $375 per hour, 2.8 hours billed by
Charlene Wilhelmsen at a rate of $130 per hour and 0.3 hours
billed at a rate of $160 per hour by Koenig Pierre.

1.   Reasonable Hourly Rates

26.   The hourly rates used in making a fee award should
be "what a reasonable, paying client would be willing to pay."
Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

---

[1]Plaintiff's calculation indicates that $4,900 in fees are
attributable solely to Dilbert's and $6,378 in fees are
attributable to all three of the defendants (see Plaintiff's
Worksheet attached as Ex. J to Plf. Mem.).  The notations made by
plaintiff on Invoice No. 136115, however, indicate that the
amount of fees attributable solely to Dilbert's is $4,795 and
$6,483 in fees are attributable to all three of the defendants.
Because plaintiff bears the burden of demonstrating the amount of
fees incurred in bringing this action, see e.g. Cruz v. Local
Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160
(2d Cir. 1994), I construe this contradiction in defendants'
favor and consider the amount of fees attributable to all three
defendants to be $6,378.

Albany, supra, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); accord Reiter v. MTA New York City Tran. Auth., 457 F.3d 224, 232 (2d Cir. 2006), cert. denied, 127 S.Ct. 1331 (2007).  In determining what a reasonable hourly rate is, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  Farbotko v. Clinton Co., 433 F.3d 204, 208-09 (2d Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); Miele v. New York State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).  Finally, the Second Circuit has also identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184.  In all cases, "the fee applicant has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits' -- that the requested hourly rates are the prevailing market rates."  Farbotko v. Clinton Co., supra, 433 F.3d at 209, quoting Blum v. Stevenson, supra, 465 U.S. at 896 n.11.

27.  The majority of the fees in this action were billed by Schurin, a partner at Gottlieb, Rackman,& Reisman, LLC who was admitted to practice in New York in 1995 (Richard S. Schurin Lawyer Profile, http://www.martindale.com/Richard-S-Schurin/55-2480-lawyer.htm (Last visited Feb. 1, 2009).  In support of its application, plaintiff has attached a copy of the American Intellectual Property Law Association's Report, which indicates that the average hourly rate charged by an intellectual property lawyer in the New York area in 2006 was $453.  Schurin's hourly rate of between $350 and $375 appears to be reasonable in light of his fourteen years of experience, his specialty and the geographic area in which he practices.  See e.g. Entral Group Int'l, LLC v. Sun Sports Bar Inc., 05-CV-4836 (CBA), 2007 WL 2891419 at *10 (E.D.N.Y. Sept. 28, 2007) (approving hourly rate of $560.00 in copyright infringement case); Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag Ag, 04 Civ. 2983 (DLC)(KNF), 2006 WL 5804603 at *6 (S.D.N.Y. Dec. 11, 2006)

(awarding attorney's fees of $400-$540 per hour for partner in a trademark infringement case); Stevens v. Aeonian Press, Inc., 00 Civ. 6330 (JSM), 2002 WL 31387224 at *5 (S.D.N.Y. Oct. 23, 2002) (approving hourly rate of $460.00 for partners at a Manhattan firm in copyright infringement case); A.V. by Versace, Inc. v. Gianni Versace S.p.A., 96 Civ. 9721 (PKL)(THK), 98 Civ. 0123 (PKL)(THK), 2002 WL 1046705 at *2 (S.D.N.Y. May 23, 2002); Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp.2d 54, 58 (S.D.N.Y. 2000), aff'd, 262 F.3d 101 (2d Cir. 2001).

28.   Accordingly, I conclude that Schurin's hourly rate of $350 to $375 was reasonable.

29.   Plaintiff has not, however, made any showing of reasonableness of the hourly rates sought for Charlene Wilhelmsen or Koenig Pierre who also billed hours on this case.  Indeed, plaintiff has not offered any evidence of the title, experience, or skills possessed by Wilhelmsen or Pierre nor has it explained their respective billing rates of $130 per hour and $160 per hour.  "Where the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested."  Protection One Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC, 553 F. Supp.2d 201, 209 (E.D.N.Y. 2008) (reducing the associate's compensation from $275/hour to $250/hour and reducing the paralegal's compensation from

16

$135/hour to $80/hour), <u>citing</u> <u>Nat'l Ass'n for the Specialty Food</u>
<u>Trade, Inc. v. Construct Data Verlag Ag</u>, <u>supra</u>, 2006 WL 5804603
at *6 (reducing the paralegals' rates from $200/hr and $215/hour
to $180/hour); <u>Yea Kim v. 167 Nail Plaza, Inc.</u>, 05 Civ. 8560
(GBD)(GWG), 2009 WL 77876 at *9 (S.D.N.Y. Jan. 12, 2009) (reduc-
ing the paralegal's billing rate to $50/hour due to plaintiff's
failure to provide any information regarding their expertise or
experience); <u>Century 21 Real Estate, LLC v. Raritan Bay Realty,</u>
<u>Ltd.,</u> CV-07-1455 (CPS), 2008 WL 4190955 at *10 (E.D.N.Y. Sept. 3,
2008) ("no paying client would be content to pay such rates . . .
without some explanation of what the 'staff' and 'other' designa-
tions connote and the qualifications of the incumbents in those
positions").

30.   Accordingly, due to plaintiff's failure to provide
any information concerning Wilhelmsen or Pierre or the basis for
their rates, I believe that it is appropriate to reduce the
billing rates of Wilhelmsen and Pierre to $80 per hour.

## 2.   <u>Reasonable Hours Expended</u>

31.   "The court's role is not to determine whether the
number of hours worked by [the movant's] attorneys represents the
most efficient use of resources, but rather whether the number is
reasonable."  <u>In re Arbitration Between P.M.I. Trading Ltd. v.</u>
<u>Farstad Oil</u>, 160 F. Supp.2d 613, 616 (S.D.N.Y. 2001).  "If a

court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002), citing In re "Agent Orange" Products Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987).  The party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n of New York v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003).

        32.  Plaintiff seeks reimbursement for a total of 39.5 hours of time expended by Schurin on this case.  Plaintiff has submitted contemporaneous time records, as required by New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983), that set forth the dates on which services were performed, the hours spent and the nature of the services performed.  See Wells Fargo Bank v. BrooksAmerica Mortgage Corp., 02 Civ. 4467 (HB), 2004 WL 2754855 at *1

18

(S.D.N.Y. Dec. 1, 2004), <u>citing</u> <u>Mikes v. Straus</u>, 274 F.3d 687, 706 (2d Cir. 2001).

      33.  Plaintiff has excluded from its fee request any hours billed prior to March 13, 2006, the date that plaintiff began drafting the amended complaint naming AJI and Iati as defendants.  Plaintiff has also excluded those entries which it has determined were devoted entirely to settling this action with Dillard's.  Finally, plaintiff has excluded one third of the fees incurred between March 13, 2006 and August 16, 2006 based on the rationale that one of the three defendants was dismissed from this action on August 16, 2006, and, therefore, the remaining two defendants should only be responsible for two-thirds of the fees incurred prior to Dillard's dismissal.

      34.  Having reviewed plaintiff's submission, I believe that plaintiff has accurately documented the hours on this matter.  Plaintiff's submission does, however, present several issues which I must address in order to determine whether the amount of fees requested is reasonable.

      35.  First, while plaintiff's method of dividing the hours billed during this period equally among the defendants is appealing in its simplicity, I am not entirely convinced that it is an accurate way of allocating the hours.  Several of the entries, for example, involve a mix of tasks some of which can be divided evenly among all three defendants but some of which

should be allocated entirely to Dillard's.[2]  See <u>Yash Raj Films</u> <u>(USA) Inc. v. Movie Time Video USA, Inc.</u>, 04 CV 5107 (JG)(RML), 2007 WL 2572109 at *5 (E.D.N.Y. July 26, 2007) (reducing plain-tiff's fee application by twenty percent to adjust for multiple vague entries that could be attributed, in part, to those defen-dants that no longer remained in the action); <u>see also</u> <u>Hensley v. Eckerhart</u>, <u>supra</u>, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); <u>N.Y. State Ass'n for Retarded Children v. Carey</u>, <u>supra</u>, 711 F.2d at 1147-48 (a party seeking attorneys' fees bears the burden of supporting its claim with detailed and contempora-neous time records); <u>but see</u> <u>Arclightz & Films Pvt. Ltd. v. Video</u> <u>Palace Inc.</u>, 303 F. Supp.2d 356, 364 (S.D.N.Y. 2003) (dividing several of the entries by half because those charges may be fairly apportioned among all of the defendants including those that were previously dismissed on summary judgment).  Second, several of plaintiff's entries are so vague or inadequately explained such that it is impossible to determine whether the hours are duplicative or excessive.  For example, plaintiff seeks reimbursement for a series of telephone conversations or letter

---

[2]The entry for May 9, 2006, for example, indicates that Schurin billed a total of 2.5 hours for (1) "a phone conference with H. Rogatnick [Dillard's counsel] re: settlement", a task which should be attributed entirely to Dillard's and (2) "preparing for and attending initial conference", a task which should be apportioned equally among all three defendants.

communications with unidentified individuals, S. Sia, B. Yost, and L. Elfeld.  See e.g. Shannon v. Fireman's Fund Ins. Co., 156 F. Supp.2d 279, 301 (S.D.N.Y. 2001), citing Skold v. Am. Intern. Group, Inc., 96 Civ. 7137 (HB), 1999 WL 405539 at *10 (S.D.N.Y. June 18, 1999) aff'd, 205 F.3d 1324 (2d Cir. 2000) (reducing the number of hours by 10% to account for vague entries).

      36.  Considering, the large number of hours expended on this relatively straightforward copyright action, in which the defendants defaulted, in conjunction with the aforementioned issues, I conclude that a ten percent reduction[3] in the amount of hours for which compensation is sought is warranted.  See In re "Agent Orange" Product Liab. Litig., supra, 818 F.2d at 237 ("the district court has the authority to make across-the-board per-centage cuts in hours as a practical means of trimming fat from a fee application") (internal citations omitted); United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989); Days Inn Worldwide, Inc. v. Amar Hotels, Inc., 05 Civ. 10100 (KMW)(KNF), 2008 WL 2485407 at *10 (S.D.N.Y. June 18, 2008) (reducing plaintiff's fees by 75 percent from $20,057.54 to $5,014.38 because the case involved a settled area of law and the

---

[3]I believe that only a ten percent reduction is warranted here, in part, because plaintiff did not include any of the hours billed by its attorney prior to March 13, 2006.  Some of these hours were devoted to tasks, such as drafting the complaint, that reduced the total number of billable hours attributable to AJI and Iati undertaken after March 13, 2006.

defendant defaulted); La Barbera v. J.E.T. Res., Inc., 396 F. Supp.2d 346, 352 (E.D.N.Y. 2005) (hours reduced by fifty percent); DCH Auto Group (USA) Inc. v. Fit You Best Automobile, Inc., supra, 2006 WL 279055 at *6 (total requested reduced by thirty-five percent); S.E.C. v. Goren, 272 F. Supp.2d 202, 213 (E.D.N.Y. 2003) (thirty percent reduction in the hours billed); GTFM, Inc. v. Solid Clothing, Inc., 01 Civ. 2629 (DLC), 2002 WL 31886349 at *3 (S.D.N.Y. Dec. 26, 2002) (deducting $20,000 from the fee application because defendant held too many conferences).

37.   Reducing (1) Wilhelmsen and Pierre's hourly rates to $80 per hour, and (2) the hours for which compensation is awarded by ten percent, results in a fee award of $12,728.70, calculated as follows:

**Fees Incurred between March 15, 2006 and August 17, 2006**

Richard Schurin

| | | |
|---|---|---|
| Total Hours Worked | 18.3 hours | |
| 2/3 of Hours Worked (reduction for work attributable to Dillard's) | 12.2 hours | |
| 90% of adjusted hours | 10.98 hours | |
| 10.98 hours X $350/hour = | | $3,843.00 |

Charlene Wilhelmsen

| | |
|---|---|
| Total Hours Worked | 0.6 hours |
| 2/3 of Hours Worked (reduction for work attributable to Dillard's) | 0.4 hours |

```
90% of adjusted hours          0.36 hours
0.36 hours X $80/hour =                        $28.80
```

**Fees Incurred after August 17, 2006**

<u>Richard Schnurin</u>

```
Total Hours Worked            27.5 hours
90% of Hours Worked           24.75 hours
24.75 hours X $350/hour =                      $8,662.50
```

<u>Charlene Wilhelmsen</u>

```
Total Hours Worked            2.4 hours
90% of Hours Worked           2.16 hours
2.16 hours X $80/hour =                         $172.80
```

<u>Koenig Pierre</u>

```
Total Hours Worked            0.3 hours
90% of Hours Worked           0.27 hours
0.27 hours X $80/hour =                          $21.60
```

**TOTAL**                                       **$12,728.70**

    3.  <u>Costs</u>

38.  Plaintiff also requests an award of $294.67 in costs.  Plaintiff arrives at this number by reducing the $418.82 in costs incurred between March 13, 2006 and August 16, 2006 by one third.  These costs include $2.00 in reproduction costs, $3.00 in travel expenses, $178 for service of process, $42 for trademark searches, and $371.56 in charges for a trademark

investigator.  Plaintiff also incurred $18.25 in reproduction

costs after August 16, 2006.  These are the types of routine

costs typically awarded to the prevailing party in a copyright

action.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v.

County of Albany, 369 F.3d 91, 98 (2d Cir. 2004) amended and

superseded on other grounds, 522 F.3d 182 (approving the award of

online research costs); Kuzma v. Internal Revenue Serv., 821 F.2d

930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket dis-

bursements for items such as photocopying, travel, and telephone

costs" are compensable); Duke v. County of Nassau, 97-CV-1495

(JS), 2003 WL 23315463 at *6 (E.D.N.Y. Apr. 14, 2003) ("Courts

have continuously recognized the right for reimbursement of costs

such as photocopying, postage, [and] transportation"); Tri-Star

Pictures, Inc. v. Unger, 42 F. Supp.2d 296, 306 (S.D.N.Y. 1999);

LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).

        39.  Accordingly, I conclude that plaintiff is entitled

to $294.67 in costs.


IV.  Conclusion

        For all the foregoing reasons, I conclude that plain-

tiff is entitled to recover against the defendants AJI and Iati

the amounts of $50,000 in statutory damages plus $12,728.70 in

attorney's fees and $294.67 in costs for a total award of $63,023.37.  The Clerk of the Court is directed to enter judgment accordingly.


Dated:   New York, New York
         April 29, 2009

                              SO ORDERED,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

George Gottlieb, Esq.
Richard S. Schurin, Esq.
Gottlieb, Rackman, & Reisman, P.C.
270 Madison Avenue
New York, New York, 10016

Howard M. Rogatnick, Esq.
Bryan Ha, Esq.
271 Madison Avenue
20th Floor
New York, New York, 10016